Nash, C. J.
 

 The action is upon a promissory note, to which there are two names as makers, the defendant and one Andrew Shaw. The latter is á slave, and is the principal in the bond, and the former executed it as his surety. The case presents the question, whether a person can bind himself, as surety, for the performance of a contract which is forbidden by law. Under our system of laws a slave can make no contract. In the nature of things, he cannot. He is, in contemplation of law, not a person for that purpose. He has no legal capacity to make a contract. lie has no legal mind. He is the property of his master. All the proceeds of his labor belong'to his master. If property is devised or given to him, the devisé or bequest is void, and the
 
 *234
 
 gift of personals, either belongs still to tbe giver, or becomes the property of the owner of the slave. A slave has no legal
 
 stafas
 
 in our courts, except as a criminal, or as a witness in certain cases. The policy of our laws in keeping slaves within their proper sphere, has run through all our legislation, where their acts are the subject-matter. The 34th chapter of the Bevised Code, secs. 83, 84, 85, and 86, forbids all trading with slaves, except upon certain conditions. In this case the defendant became bound, that the slave, Andrew, should pay the plaintiff the sum of 5. Andrew, then, was the principal in the note. lie contracted tfie debt with the plaintiff, and he must, therefore, have traded with him. We are not informed what the consideration was, whether work or labor, merchandise sold, or money lent. J If it was either of these, it was illegal. We are not trying an indictment, either against the plaintiff or defendant, under the act referred to. To sanction this transaction, the policy of the State would be manifestly contravened. One keeping a grog-shop, or store, could easily secure the profits of his illegal act by getting a white man to secure to him the ill-gotten fruits of the trade, although lie will still run the risk of a prosecution. The 85th section of the Act referred to, declares,
 
 “
 
 nor shall any person at any other time, buy, or receive from any slave, without a written permission for that purpose, from the person then having the management of such slave, specifying the articles to be sold,” Ac. If, therefore, a slave carries with him money to pay for the article, he must have a written permission, specifying the amount of money to be laid out; for the payment of the money is trading within the act, and forbidden by it. We are satisfied that this transaction was in violation of the law of the country and its settled policy. It infringes upon the rights of the master; leads directly to the destruction of the value of his property ; and encourages that spirit of personal freedom in our slaves which is pregnant with so many fearful results.
 

 This case has been compared to a bond given by an infant, to which an adult is the surety. This is inoperative as to the infant, but binding on the other. Also, a bond given by a
 
 *235
 
 feme covert is void as to ber, but good as to the surety. Neither of these instances control our case. The bond of an infant is not void, but only voidable. The incapacity of a feme covert springs from the social connection in which she stands to her husband. But even a feme covert may make a valid contract, binding in Equity, upon such property as she may have independently of her husband. These contracts are not unlawful or contrary to the policy of the State. Contracts made with a foreign enemy, or for smuggling, are more in point. The case of
 
 Ingram
 
 v. Ingram, decided at this term, (ante 188,) sustains this opinion.
 

 Believing, as we do, that the whole transaction was illegal and in violation of the settled policy of the country, we are of opinion that the Court erred in giving judgment for the plaintiff.
 

 The judgment, according to the agreement of the parties, is set aside, and a judgment of'nonsuit awarded.
 

 Pee Curiam. Judgment reversed.